**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-21095-CIV-DIMITROULEAS/D'ANGELO**

L.M.,

     **Plaintiff,**

vs.

**CARNIVAL CORPORATION,**

     **Defendant.**

_____/

**ORDER FOLLOWING DISCOVERY HEARING**

     **THIS CAUSE** is before the Court on Plaintiff L.M.'s Motion to Compel Investigatory

Materials Produced by Carnival to the FBI and Ship Inspection filed on October 17, 2025 (DE 35)

("Plaintiff's Motion"), and Defendant Carnival Corporation's Motion to Compel Plaintiff's

Compulsory Medical Examination filed on October 24, 2025 (DE 43) ("Defendant's Motion").[1]

Defendant filed a response in opposition to Plaintiff's Motion on October 24, 2025 (DE 42), and

Plaintiff filed a response in opposition to Defendant's Motion on October 29, 2025 (DE 48).  The

Court held a hearing on the Motions on November 5, 2025, at which it heard the arguments of the

Parties (DE 49).  Having considered the Parties' arguments, the relevant legal authorities, and the

pertinent portions of the record, and being otherwise fully advised in the premises, for the reasons

stated on the record during the November 5, 2025 hearing (DE 49), Plaintiff's Motion to Compel

---

[1] This case was referred the undersigned Magistrate Judge for appropriate disposition of all pretrial
discovery motions (DE 17).

(DE 35) is **GRANTED IN-PART AND DENIED IN-PART**, and Defendant's Motion to Compel (DE 43) is **GRANTED**.

## I.    BACKGROUND

Plaintiff was a cruise ship passenger on the *Carnival Magic* (DE 22 ¶¶ 8, 13).   Plaintiff filed this lawsuit against Defendant asserting claims arising out of an alleged sexual assault by Defendant's former employee onboard the ship (*id.* ¶¶ 66-145).   Plaintiff alleges that Defendant is strictly liable for the sexual assault and false imprisonment by its employee, and for intentional infliction of emotional distress (*id.* ¶¶ 55-87).   Plaintiff also brings negligence claims against Defendant for failure to warn, negligent security, and negligent selection/hiring, training, and retention (*id.* ¶¶ 88-145).   Specifically, Plaintiff alleges she was sexually assaulted and falsely imprisoned by a former Carnival crewmember after she agreed to go into his cabin on March 22, 2024 (*id.* ¶¶ 18-22, 66-74).   According to Plaintiff, she suffered damages, including but not limited to psychological damages (*id.* ¶¶ 65, 74, 87, 96, 99).

Defendant disputes Plaintiff's claims and maintains that Plaintiff voluntarily went to the crewmember's cabin and engaged in consensual sexual actions while she was there (DE 26 at 10). Defendant interviewed the crewmember as part of its investigation into Plaintiff's allegations, and he maintained that all the actions inside his cabin were consensual (*id.*).   The crewmember's account is reflected in a written witness statement and on body worn camera video ("BWC") obtained by Defendant's security team during its investigation into the incident (DE 42 at 4). According to the Amended Complaint, Plaintiff did not report the alleged sexual assault while on the cruise ship (DE 22 ¶ 25).   Defendant was notified of the assault by the Federal Bureau of Investigation ("FBI") (DE 49).   Defendant corresponded with the FBI via e-mail and provided the

FBI with information and documents about the alleged sexual assault, including the crewmember's written witness statement (DE 42 at 2).

In her Motion, Plaintiff seeks to compel production of the crewmember's written witness statement that Defendant provided to the FBI (DE 35).  Plaintiff argues that Defendant's production of the crewmember's statement to the FBI constitutes waiver of the work-product doctrine (*id.*).  Additionally, Plaintiff seeks to compel the inspection of a portion of Defendant's ship in relation to her negligent security claim.  Plaintiff seeks to have her security expert inspect the ship from the elevator where Plaintiff and the crewmember met on the night of the incident to the crewmember's cabin, where the alleged assault occurred, including inside the cabin.

Defendants contends that the crewmember's written witness statement is protected by the work product doctrine, and Defendant has not waived that protection (DE 42).  Defendant argues that it disclosed the information from its investigation in a cooperative manner to assist the FBI with a criminal prosecution (*id.*).  Defendant also objects to the inspection of the ship as irrelevant and beyond a reasonable scope allowed under Rule 26(b)(1) of the Federal Rules of Civil Procedure (*id.*).  Defendant claims the request is overboard and irrelevant, as there are no allegations that related to the designs of the hallways, the Lido Deck, or where Plaintiff and the crewmember met (*id.*).

With respect to Plaintiff's claimed psychological damages, Defendant's Motion seeks to compel Plaintiff to submit to a Rule 35 psychological examination with its neuropsychologist expert, Dr. Kaia Calbeck (DE 43).  Defendant represented that Dr. Calbeck's examination will consist of an oral portion and a written examination consisting of the following measures: (a) Personal Assessment Inventory (PAI), (b) Symptoms Inventory Malingering Scale (SIMS), (c) Trauma System Inventory-2 (TSI-2), (d) Beck Anxiety Inventory (BAI), and (e) Beck Depression

Inventory (BDI) (*id.* ¶ 12(a)-(3)).   At the November 5, 2025 hearing, Plaintiff's counsel represented that she is willing to submit to the examination; however, Plaintiff requested that she should be allowed to audio or video record Dr. Calbeck's psychological examination of her. Defendant maintains that Plaintiff is not permitted to record, whether by audio or video, any portion of Dr. Calbeck's medical examination, as that is precluded under Rule 35.[2]

## II.   <u>LEGAL STANDARD</u>

Rule 26(b)(3) codifies the work product doctrine within the Federal Rules of Civil Procedure, which govern the scope of a discovery in a case:

> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . . But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>>
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney . . . concerning the litigation.

Fed. R. Civ. P. 26(b)(3).   "'[D]istrict courts are entitled to broad discretion in managing pretrial discovery matters,' including when ruling on the applicability of the work-product doctrine." *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013) (citations omitted). "Generally, the work product protection is waived when protected materials are disclosed in a

---

[2] Plaintiff withdrew her request to compel production of test materials, test manuals, interpretation materials, scoring sheets, raw data, and any and all other materials used or created during the compulsory medical examination based on the agreement reached by the Parties at the November 5, 2025 hearing.  If the Parties are unable to resolve the disclosure of the materials, Plaintiff may raise this issue in an appropriate motion to the Court.

manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information." *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 590 (N.D.N.Y. 1989). "Although the party seeking work-product protection bears the initial burden for establishing that the documents are entitled to such protection, after that initial burden is met, the burden shifts to the party asserting waiver to show that the party claiming the privilege has waived its right to do so." *United States Sec. & Exch. Comm'n v. Herrera*, 324 F.R.D. 258, 262 (S.D. Fla. 2017).

## III.   DISCUSSION

### A.  PLAINTIFF'S MOTION TO COMPEL

The Parties agreed as a threshold issue that the crewmember's written witness statement is privileged pursuant to the work product doctrine.  Instead of attacking the privileged nature of the crewmember's statement, Plaintiff asserts Defendant waived its claim to work-product privilege by disclosing the crewmember's statement in a way that would substantially increase the opportunity for potential adversaries to obtain the information.  Plaintiff further argues that even if Defendant did not waive work-product privilege for the document, she has a substantial need to obtain the crewmember's statement.[3]

Turning to the first issue, courts look at several factors to determine whether a party's voluntary disclosure of a document to a third-party waives a claim of work-product privilege. "Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334–35 (11th Cir. 2018) (citation

---

[3] In the briefing, Plaintiff also asserted that Defendant's Amended Privilege Log was deficient.  At the November 5, 2025 hearing, Plaintiff withdrew this assertion.  Therefore, the Court does not address the sufficiency of Defendant's Amended Privilege Log.

omitted). "The purpose of this protection is to protect the integrity of the adversary process by allowing a lawyer to work 'with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). However, "[w]ork-product protection is waived when protected materials are disclosed in a way that substantially increases the opportunity for potential adversaries to obtain the information." *Stern v. O'Quinn*, 253 F.R.D. 663, 681 (S.D. Fla. 2008) (citation and quotation omitted). But, "not every situation in which work-product materials are disclosed warrants a finding of waiver. Rather, the circumstances surrounding the disclosure are key to determining whether an actual waiver of the work-product protection has occurred." *Id.*

In *Brown v. NCL (Bahamas), Limited.*, the court analyzed whether a defendant cruise line waived work-product privilege for documents it voluntarily provided to a law enforcement agency. 155 F.Supp.3d 1335 (S.D. Fla. Dec. 9, 2015). There, the cruise line took a written witness statement from a passenger who allegedly attacked another passenger. *Id.* at 1337. The cruise line asserted that the written witness statement was protected from disclosure to plaintiff by the work product doctrine. *Id.* The plaintiff alleged that the cruise line waived the privilege when it voluntarily produced the statement to law enforcement – in that case, the port police. *Id.* The "key issues [were] whether the disclosure to law enforcement was compelled, whether [Defendant] waived the protection by disclosing it, and, if there is no waiver, whether Plaintiff has demonstrated substantial need and 'cannot, without undue hardship, obtain its substantial equivalent by other means.'" *Id*. at 1338 (citing Fed. R. Civ. P. 26(a)(b)(3)(A)). The court disagreed with plaintiff and held that the cruise line did not waive its work product privilege by voluntarily providing the statement to law enforcement and that plaintiff did not demonstrate a substantial need for the statement. *Id.* at 1343. In reaching that conclusion, the court explained that there was nothing in

the record to suggest that the defendant "was in an adversarial relationship" with law enforcement when it provided a copy of the statement. *Id.* at 1341 (stating "the fundamental factor" in the court's analysis was "no adversarial relationship") (emphasis omitted).

Plaintiff attempts to distinguish the facts of this case from *Brown*, because the alleged assailant in *Brown* was another passenger, whereas in this case, the alleged assailant was a crewmember. Plaintiff asserts that since the alleged assailant was a crewmember, Defendant was in an adversarial relationship with law enforcement and thus waived its work product privilege for any documents it provided to the FBI. Plaintiff relies heavily on a single sentence in *Brown*, which opined, "If the alleged attacker had been a crewmember, then NCL's motivation may have been different and the nature of the relationship with port police likely would have been different as well." *Id.* at 1341. Defendant argues that the *Brown* court determined the "*purpose*" of the defendant's disclosure was to help law enforcement, which is also applicable in this case (DE 42 at 2-1) (emphasis in original).

Notwithstanding the dicta in *Brown*, the legal framework and analysis set forth in that case does not compel a different result on the instant facts. Even though the crewmember accused of committing the sexual assault was Defendant's employee, the cruise line was not inherently in an adversarial relationship vis-à-vis law enforcement. "In the context of work product, the question is not, as in the case of attorney-client privilege, *whether* confidential communications are disclosed, but to *whom* the disclosure is made – because the protection is designed to protect an attorney's mental processes from discovery by *adverse* parties." *Id*. at 1338-39 (emphasis in original). Indeed, "[w]ork product protection is waived when protected materials are disclosed in a way that 'substantially increases the opportunity for potential adversaries to obtain the information.'" *Id*. at 1339. Plaintiff has not demonstrated how Defendant's disclosure of the

crewmember's statement to the FBI in a criminal investigation substantially increased potential adversaries' opportunity to obtain the information.  Notably, the allegations in this case do not raise any specter that Defendant, the cruise line, is criminally liable for the alleged sexual assault or that the FBI was investigating Defendant.  To the contrary, all representations indicate that the crewmember's conduct was outside his proscribed employment duties.

As *Brown* counsels, the most important factor is whether law enforcement and Defendant were adversaries at the time of disclosures, and there is nothing here to suggest that they were.  *See id.* ("[D]etermining whether [Defendant's] production of the work product statement to [law enforcement] waived the protection depends in part on whether the disclosures was [sic] compelled and, if not, the purpose of the disclosure (i.e. to help [Defendant] itself or to assist the [FBI] in a cooperative, non-adversarial effort in its investigation of others)."); *see also Meyer v. NCL (Bahamas), Ltd.*, No. 16-CIV-23238, 2017 WL 3396410, at *5 (S.D. Fla. Aug. 8, 2017) (finding no waiver of the work-product privilege when the defendant produced a witness statement to the FBI, as there was no adversarial relationship between the law enforcement and the defendant); *United States v. Zahn*, No. 22-CR-23, 2022 WL 17811346, at *10 (M.D. Fla. Dec. 19, 2022) (same).  Nothing in this record indicates that Defendant's production of the crewmember's statement to the FBI was compelled, that Defendant was also a target of the FBI's investigation, or that Defendant's production of the statement was self-serving or would somehow improve its own position with law enforcement.  To the contrary, Defendant submitted a Declaration stating that the crewmember's statement was provided to the FBI to assist in their investigation of serious criminal allegations and was done without the intent to waive the work product privilege (*see*

*generally* DE 42-2).[4]  Where Defendant and the FBI were both investigating the alleged sexual assault of Plaintiff, and Defendant provided documents to the FBI in furtherance of that investigation, their interests were not adverse.  *See Integon Nat'l Ins. Co. v. Dickerson*, No. 19-CIV-201, 2020 WL 6335944, at *5 (N.D. Ga. June 18, 2020) (finding insurance company did not waive work product protection when it provided documents to the fire department investigating the arson of the insured's home).

On the other hand, a waiver occurs when a party, who is the target of a law enforcement investigation, voluntarily discloses documents to the law enforcement agency.  *See United States v. Bergonzi*, 216 F.R.D. 487, 498 (N.D. Cal. 2003) (finding a waiver of work-product when a company disclosed information to the Government "despite the fact that the Government was investigating the Company").  For example, courts have found that if a party discloses documents to law enforcement in an effort to provide substantial assistance, and thus receive a more lenient punishment, the party waives its claim to work product protection for those documents.  *See, e.g.*, *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 270 F. Supp. 3d 1332, 1340 (S.D. Fla. 2017) ("Because it produced the documents voluntarily to the DOJ in the hopes of receiving more lenient treatment, compromising the asserted confidentiality of the documents for its own benefit, and because it decided not to assert any privileges when it was appropriate to do so, Chiquita has waived the attorney-client and work product privileges over the documents at issue."); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) (finding Westinghouse and law enforcement were adversaries, as "[u]nlike a party who assists the government in investigating or prosecuting another, Westinghouse was the target

---

[4] In *Brown*, the court considered that the cruise line expected the information it gave to the port police would "remain protected from disclosure," and that expectation was "reasonable under the circumstances."  155 F. Supp. 3d at 1342.

of investigations conducted by the agencies" (citation omitted)); *In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 465 (S.D.N.Y. 2008) (finding Credit Suisse in an adversarial position to law enforcement where "the SEC and USAO were investigating the possibility of wrongdoing, and Credit Suisse disclosed the Memoranda to escape or limit liability"). There is no such motivation for Defendant based on the information that has been provided in this case.

Finally, Defendant argues that there are important policy reasons for upholding work product protection when a cruise line voluntarily cooperates with law enforcement in the investigation of a third-party by providing information otherwise protected from disclosure. If such voluntary cooperation waives the cruise line's work product protection when the cruise line is not the subject of the investigation, it could have a chilling effect on the cruise line's willingness to assist law enforcement in prosecuting offenses perpetrated onboard the ship, where law enforcement has a diminished ability to investigate in the absence of the cruise line's cooperation. *See Brown*, 155 F. Supp. 3d at 1342 (stating that the cruise line "was effectively acting like a good corporate citizen who cooperates with law enforcement and *voluntarily* produces information (even work product) in response to a police request" in finding the cruise line and the port police were not adversaries (emphasis in original)). Accordingly, for the reasons stated above and at the November 5, 2025 hearing, the Court finds that Defendant did not waive its work-product privilege by voluntarily providing the crewmember's statement to the FBI.

Next, Plaintiff argues that there is a substantial need to obtain the crewmember's statement and that she would suffer undue hardship if not given access to the statement. Yet, no such hardship is supported by the record. Defendant represented at the November 5, 2025 hearing and in its Amended Privilege Log that the crewmember's statement is a two-page handwritten document (DE 35-2 at 3). Plaintiff has not articulated why she cannot obtain the crewmember's

account of his interaction with Plaintiff from other sources, beyond her conclusory assertions of hardship.  Importantly, the BWC video of the crewmember's verbal statements regarding the alleged assault has already been produced to Plaintiff.  Moreover, Plaintiff can depose the crewmember as part of discovery in this matter.  *See Brown,* 155 F.Supp.3d 1335 at 1343 (pointing out that "in run-of-the-mill situations, no showing of special need can be made' and noting that '[t]he court's response is generally: do you own work. Go and interview the witness yourself or go and take the deposition of party witness or subpoena the recalcitrant witness.'" (citation omitted)).  In light of the discovery that has already been produced and the tools available to Plaintiff in the discovery process, there has been no showing of substantial need to overcome the work-product privilege.

For the reasons stated herein and on the record at the November 5, 2025 hearing, Plaintiff's Motion to Compel is **GRANTED IN-PART and DENIED IN-PART**.  Plaintiff's request to compel the crewmember's written statement and cover email from Defendant to the FBI is **DENIED**.  Further, for the reasons stated on the record at the November 5, 2025 hearing, Plaintiff's request to inspect the areas on the cruise ship discussed at the hearing is **GRANTED**.  Plaintiff's security expert shall be permitted to inspect the *Carnival Magic* from where Plaintiff and the crewmember met at the elevator on the night of the alleged incident to the area of his cabin, including the hallway leading to the cabin. The parties shall confer on a reasonable time and manner for the inspection.

### B.  DEFENDANT'S MOTION TO COMPEL

Defendant filed its own Motion to Compel, challenging conditions Plaintiff requested with respect to a compulsory medical exam.  For instance, Plaintiff asserts that she will be prejudiced if the examination is not audio or video recorded, because her counsel and her retained expert will

not be able to see how the oral history was taken and how the tests were administered.  Defendant asserts that allowing Plaintiff to record the examination runs afoul of Rule 35 and its intent of placing the parties on an even playing field.  Further, Defendant maintains that the recording of the examination could affect the unhindered flow of information.

"Under Rule 35 of the Federal Rules of Civil Procedure, a court may order a party whose physical condition is in controversy to submit to a physical examination by a suitably licensed or certified examiner."  *Hacking v. United States*, No. 19-CIV-14449, 2021 WL 1342494, at *2 (S.D. Fla. Feb. 16, 2021) (citation omitted).  The rule "is silent on who may attend a compulsory medical examination."  *Goggins v. State Farm Mut. Auto. Ins. Co.*, No. 10-CIV-00826, 2011 WL 1660609, at *2 (M.D. Fla. May 3, 2011) (citation omitted).  "[T]he majority of federal courts have held that third parties should be excluded absent special circumstances."  *Calderon v. Reederei Claus-Peter Offen GmbH & Co.*, 258 F.R.D. 523, 526 (S.D. Fla. 2009) (citation omitted).  "In evaluating whether to permit the presence of a third party, the party seeking to have the observer present bears the burden of demonstrating 'good cause' for the request pursuant to Fed. R. Civ. P. 26(b), as the presence of a third party is not typically necessary or proper."  *Gordon v. United States*, No. 20-CIV-14118, 2021 WL 879204, at *2 (S.D. Fla. Mar. 8, 2021) (citation omitted).

Courts in this District have routinely declined requests for a third party to attend or record a Rule 35 examination.  In *D.S. v. Carnival Corporation*, which also involved a psychological examination of a plaintiff by the same expert in this case, Dr. Kaia Calbeck, the court held that plaintiff's counsel could not attend or record the medical examination 24-CIV-24428, DE 67 at 2-3 (S.D. Fla. May 19, 2025).  The court also ruled that "neither a videographer nor a court reporter may be present."  *Id.* at 3.  Similarly, in *Davanzo v. Carnival Cruise Lines*, the court found, "[T]he presence of an attorney and video equipment at a compulsory medical examination would be

unwieldy, problematic, and unnecessary." 14-CIV-20153, 2014 WL 1385729, (S.D. Fla. April 9, 2014).

Plaintiff offers no reason why the Court should deviate from the weight of authority in this District that finds a plaintiff is not entitled to have a third-party present or record a Rule 35 examination. As explained in *Davanzo*, there are several concerns: (1) the attendance of an attorney may well impede the doctor's ability to conduct a comprehensive, orderly examination and to ask all the questions he or she might otherwise ask; (2) the presence of a videographer, court reporter, or other third-party could easily undermine the doctor's ability to comfortably conduct a physical examination; and (3) the videotaping of the examination could quickly hinder the doctor's ability to conduct and complete the examination and could also generate an awkward atmosphere. *Id*. at *3-5. The Court finds the same concerns applicable here, which are magnified by the nature of the circumstances in this case and the type of examination – a psychological examination of a plaintiff alleging emotional damages from a sexual assault. Therefore, Defendant's Motion to Compel (DE 43) is **GRANTED**. Plaintiff shall attend her medical examination with Defendant's neuropsychologist, and Plaintiff is not permitted to audio or video record any of the examination.

## IV.   <u>CONCLUSION</u>

For the reasons discussed above and on the record during the November 5, 2025 hearing, Plaintiff's Motion to Compel (DE 35) is **GRANTED IN-PART AND DENIED IN-PART**. Additionally, Defendant's Motion to Compel (DE 43) is **GRANTED**. The Court ruled during November 5, 2025 hearing, and the Court's rulings are effective as of that date. To the extent the

Court made additional or more detailed rulings on the record that are not memorialized in this written Order, those rulings are binding on the Parties as set forth on the record.

      **DONE and ORDERED** in Chambers in Miami, Florida, on this 8th day of December, 2025.

                                     _____

                                     ELLEN F. D'ANGELO
                                     UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record